UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| MARK REDDIN,<br>Plaintiff | CIVIL ACTION NO. 2:20-CV-00908 |
| VERSUS | JUDGE CAIN |
| ANDREW SAUL,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br>Defendant | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Before the Court is Mark Reddin's ("Reddin's") appeal of the denial of Social Security disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits by the Commissioner of Social Security (the "Commissioner"). ECF No. 1. Because the ALJ applied the correct legal standards and substantial evidence supports the ALJ's decision, the Commissioner's decision should be AFFIRMED, and Reddin's appeal should be DENIED and DISMISSED WITH PREJUDICE.

I. Background

Reddin filed applications for a period of disability and DIB under Title II and for SSI under Title XVI of the Social Security Act (the "Act") on August 16, 2018. ECF 10-1 at 118, 124. Reddin alleged a disability onset date of June 21, 2018, due to depression. *Id.* at 43. Reddin's claims were initially denied by the Social Security Administration ("SSA") on November 28, 2018. *Id.* at 48, 57.

Reddin's applications were heard before an administrative law judge ("ALJ") on October 9, 2019. *Id.* at 27. Reddin appeared with Beth Drury, a vocational expert

("VE"). *Id.* He also appeared with attorney Jennings Jones ("Mr. Jones"). *Id.* The ALJ denied Reddin's claims on October 29, 2019. *Id.* at 13-22. The ALJ determined that Reddin was not disabled under the Act, finding at Step Five of the sequential evaluation process that Reddin is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. *Id.*

On May 22, 2020, the Appeals Council denied Reddin's request for review. *Id.* at 4. The ALJ's October 29, 2019 decision became the final decision of the Commissioner. *Id.*

Reddin filed this appeal for judicial review. ECF No. 1. He asserts that the Commissioner's decision was based on legal error, and is not supported by substantial evidence. *Id.* at 2. Specifically, Reddin argues that the ALJ erred at Step Three in finding that he does not meet the listing of 12.04. *Id.* at 2. Reddin asserts that the ALJ's specific finding that Reddin suffers from a severe mental illness is inconsistent with his findings of either mild or moderate limitations under 12.04. ECF Nos. 1, 13.

A. <u>Administrative Hearing</u>

At the October 9, 2019 administrative hearing, Reddin testified that he completed eleventh grade and obtained a GED. ECF No. 10-1 at 30. He is a veteran of the United States Navy. *Id.* at 33. He lives with his mother, who is retired. *Id.* at 30. Reddin testified that after June of 2018, he worked as a cook. *Id.* He was also an electrician. *Id.* He is left-handed, is 5'10," and weighs about 180 pounds. *Id.* at 30-31.

Reddin injured his back in a car wreck in 2005. *Id.* at 31. As a result, he became addicted to pain medication. *Id.* But he stated that was in the past. *Id.* He testified it had been about a year since he last used anything like marijuana or meth. *Id.*

Reddin testified that he could not handle working and that "a lot of stress and things were going on." *Id.* at 31-32. When at work, he gets uncomfortable in certain situations and with being around people. *Id.* at 32. He has a problem with his mind wondering. *Id.* Reddin testified he can drive, wash dishes, do laundry, and sweep and mop. *Id.* at 32.

Reddin's attorney also questioned him. *Id.* at 33. Reddin stated he has attention deficit disorder ("ADD"). *Id.* He takes 30 milligrams ("mg") of Adderall and a 70 mg Vyvanse. *Id.* That somewhat helps him, but he still has issues focusing on a task. *Id.*

Reddin went a couple of times to the VA in Alexandria, Louisiana. *Id.* at 34. He testified that one day at work he left and ended up in Lafayette. *Id.* He stated he was "bad off" and "wanted to just end it all," but someone talked him out of it. *Id.* He was then brought to the VA's office and transported from Lafayette to Alexandria. *Id.* He stayed at the Alexandria VA Hospital for about a week. *Id.*

Reddin then moved to his uncle's place in Colorado and "got lost out there again." *Id.* He ended up in the VA Hospital in Colorado for a couple of weeks. *Id.* He was diagnosed with major depressive disorder, with some psychotic features. *Id.*

Reddin testified he was having suicidal thoughts, agitation, aggression, and violence toward other people. *Id.* at 35. But he felt he was doing better than before. *Id.* He still has issues focusing or staying on task. *Id.* He tends to stay to himself now so that he's not around people. *Id.* He was concerned about possibly hurting someone or being triggered by being around people. *Id.*

The VE had the ALJ clarify that Reddin's jobs included a fry cook and electrician, not an electrician helper. *Id.* at 36. The VE then testified that Reddin's past work consists of electrician, DOT[1] number 824.261-101, SVP level of 7, skilled, medium strength; and short order cook, DOT number 313.374-014, SVP level 3, semi-skilled, and light strength. *Id.*

The ALJ asked the VE to assume a hypothetical individual with Reddin's age, education, work history, and transferable skills, limited to occasionally interacting with the public; and with occasionally numb hands where he could not feel texture. *Id.* at 37. The ALJ asked the VE if, based on those limitations, whether such an individual could perform any of Reddin's past work. *Id.* The VE testified that the hypothetical individual could not. *Id.* She explained that a short order cook would have to work around heat and would expose themselves to burns if the individual was unable to feel texture. *Id.* She also explained that an electrician must work with their hands and could be electrocuted if they were having numbness. *Id.*

The ALJ asked if there would be any other jobs in the national economy that a person with those limitations could perform. *Id.* at 37. The VE testified that there

---

[1] Dictionary of Occupational Titles.

4

are other jobs in the national economy that such an individual could perform. *Id.* The VE stated that the individual could work the following jobs: (1) a cleaner, housekeeper, DOT number 323.687-014, SVP level of 2, light strength level (151,000 jobs in the national economy); (2) price marker, DOT number 209.587-034, SVP level 2, light strength level (51,000 jobs in the national economy); (3) linen room attendant, DOT number 222.387-030, SVP level 2, medium strength level (51,000 jobs in the national economy). *Id.* at 38.

The ALJ asked the VE to assume further that the hypothetical individual has additional limitations of drug addiction and alcoholism ("DAA") issues and cannot interact with others in the workplace, including the public, supervisors, peers, and coworkers, on a consistent basis of more than two hours a day. *Id.* at 38. The VE testified that no jobs would be available to that hypothetical individual because one must have some type of contact with somebody during the course of an eight-hour workday. *Id.* The VE testified her testimony is consistent with the DOT. *Id.* Reddin's attorney had no follow-up questions. *Id.*

B. **ALJ's Findings**

To determine disability, the ALJ applied the five-step sequential process outlined in 20 C.F.R. §§ 404.1520(a), 416.920. The sequential process required the ALJ to determine whether Reddin: (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Appendix 1"); (4) is unable to do the kind of work he did in the past; and (5) can perform any other type of work. If it is determined

at any step of that process that a claimant is or is not disabled, the sequential process ends. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (citing *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

To be entitled to benefits, an applicant bears the initial burden of showing that he is disabled. Under the regulations, this means the claimant bears the burden of proof on the first four steps of the sequential analysis. Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant can perform work in the national economy. *See Greenspan*, 38 F.3d at 237.

Here, the ALJ found that Reddin meets the insured status requirements of the Act through March 31, 2023. ECF No. 10-1 at 15. He found that Reddin had not engaged in substantial gainful activity since his alleged onset date of June 21, 2018. *Id.* In Steps Two and Three of the sequential evaluation, the ALJ determined that Reddin suffered severe impairments of personality disorder, major depressive disorder, polysubstance abuse, and carpal tunnel syndrome. *Id.* But the ALJ concluded that Reddin did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in Appendix 1. *Id.* at 15-16.

The ALJ determined Reddin retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels except limited to occasional interaction with the public, and due to occasional numbness, the clamant would be

unable to feel texture. *Id.* at 17. He concluded that Reddin's RFC precluded him from performing any past relevant work. *Id.* at 20.

He further found that Reddin – age 35 on his alleged onset date – was a younger individual with at least a high school education and the ability to communicate in English. *Id.* Transferability of job skills was not material to the ALJ's determination of disability, because he found that using the Medical-Vocational Rules as a framework supported a finding that Reddin was "not disabled."

The ALJ also determined that, considering Reddin's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Reddin could have performed. *Id.* at 21. The ALJ concluded that Reddin had not been under a disability, as defined in the Act, at any time from June 21, 2018 (the alleged onset date) through the date of his decision. *Id.* at 22.

II. <u>Law and Analysis</u>

    A.   <u>Scope of Review</u>

In considering Social Security appeals, the Court is limited by 42 U.S.C. § 405(g) to a determination of whether "substantial evidence" exists in the record to support the Commissioner's decision, and whether there were any prejudicial legal errors. *See McQueen v. Apfel*, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. *See Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision, but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. *See Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the factfinder. *See Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987); *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than a court. *See Allen v. Schweiker*, 642 F.2d 799, 801 (5th Cir. 1981); *see also Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992). A court does have authority, however, to set aside factual findings that are not supported by substantial evidence and to correct errors of law. *See Dellolio*, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *See Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988); *Dellolio*, 705 F.2d at 125.

      **B.**    <u>**Reddin failed to satisfy his Step Three burden of establishing that he has an impairment that meets Listing 12.04.**</u>

Reddin argues that the ALJ erred in finding that he does not meet the listing of 12.04. ECF No. 13 at 2. Reddin claims that the medical evidence supports a listing under 12.04 and that he suffers from a mental disability considered to be disabling. *Id.* Reddin argues the ALJ determined at Step Two that Reddin has severe mental

issues, but found only a mild limitation in understandings, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or management oneself and only a moderate limitation in interacting with others. *Id.*

Reddin contends that because he was found to have a "severe" mental illness, under 20 C.F.R. 404.1520c he is limited in his ability to perform basic work activities. *Id.* at 3. And he claims that this certainly means he would have a severe impairment on at least one of the four dimensions to meet or equal a listing under 12.04. *Id.* Reddin argues the ALJ's finding that Reddin suffers a severe mental illness is inconsistent with his limitation findings under 12.04; thus, his decision is not supported by substantial evidence. *Id.* at 4.

Reddin relies on the record evidence of him being hospitalized for his mental disability twice in a few months' span during 2018. *Id.* at 2. Reddin's records show he was hospitalized at the Alexandria, Louisiana VA Medical Center from July 26, 2018 to July 31, 2018 for diagnoses of Amphetamine Dependence and Major Depression, Recurrent Severe. ECF No. 10-1 at 192. Reddin voluntarily submitted to psychiatric care, requesting to "detox from 'drugs,' 'everything, but meth.'" *Id.*

On admission, he was alert and oriented with sad mood and flat affect. *Id.* On discharge, the treating team and attending physician determined Reddin was not overtly psychotic nor a danger to himself or others for harm and concurred with his request for discharge. *Id.* He was prescribed mood stabilizers, anti-depressant, and anxiety medications and was instructed to abstain from both alcohol and illicit drugs. *Id.* at 193.

Reddin was readmitted at the Rocky Mountain Regional VA Medical Center in Colorado from August 18, 2018 to August 24, 2018. ECF No. 101- at 373. Records show he drove himself to the emergency room extremely intoxicated and asked for "mental health for (his) meds." *Id.* On discharge, his assessment noted he has a history of Major Depressive Disorder versus bipolar mood disorder; generalized anxiety disorder; ADHD; opiate use disorder; and alcohol use disorder. *Id.* at 414. His records note he was admitted for suicidal ideations and mood disturbances in the context of significant stressors and heavy alcohol use. *Id.* It was further noted that it was unclear if Reddin carried a diagnosis of Major Depressive Disorder versus bipolar disorder versus substance-induced mood disturbance, as his symptoms could not be separated from substance use. *Id.*

On October 2, 2018, on follow-up with his social worker, Reddin noted that he found it difficult to remain sober from alcohol in social settings. *Id.* at 200. He and his social worker identified triggers associated with his substance abuse so he could be better prepared for situations. *Id.* at 200-201. Reddin reported he was stable on his medications, and he denied suicidal or homicidal ideations. *Id.* at 201. His diagnoses were Alcohol Dependence with alcohol-induced mood disorder, Opioid Dependence with opioid-induced mood disorder, and Other Stimulant Dependance. *Id.*

Both Fifth Circuit case law and the regulations recognize that at Step Three of the evaluation process the burden remains on a claimant to establish that his impairment meets or equals a Listing, not upon the Commissioner, to prove that a

claimant's impairment does not satisfy a listing. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991); 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (citation omitted) (emphasis in original).

Listing 12.04 establishes the criteria for depressive, bipolar, and related disorders. *See* 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00(A), 12.04.[2] To meet Listing 12.04, the claimant must satisfy the requirements listed in both paragraphs A and B of the regulation, or paragraph C. *See id.* In evaluating a claimant's mental impairment, the ALJ must follow the procedure set forth in 20 C.F.R. § 404.1520a. Section 404.1520a requires an ALJ to evaluate the impact of a claimant's mental impairment on four broad functional areas, known as the "paragraph B" criteria: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3).

At Step Two in the evaluation process, the paragraph B criteria are used to determine whether a claimant has a severe mental impairment. *Id.* at § 404.1520a(d). At Step Three, the paragraph B criteria are used to determine whether a claimant meets a listing and can therefore be presumed disabled. 20 C.F.R. Pt. 404, Subpt. P,

---

[2] The mental disorder listings were amended effective in January 2017. *See* Soc. Sec. Admin., *Revised Medical Criteria for Evaluating Mental Disorders*, 81 Fed. Reg. 66138-01, 2016 WL 5341732 (Sept. 26, 2016) (effective Jan. 17, 2017).

11

App. 1 § 12.00(A). To satisfy the Paragraph B requirements of Listing 12.04, the mental impairments must have resulted extreme limitation of one, or marked limitation of two, of the four functional areas under paragraph B: (1) understand, remember, or apply information; (2) interact with others; (3) concentration, persist, or maintain pace; or (4) adapt and manage oneself. 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.04.

Here, after he considered the entire record, the ALJ determined that despite Reddin's symptoms from his impairments, the medical evidence did not establish the specific criteria of any listings in Appendix 1, and that no acceptable medical source mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination ECF No. 10-1 at 16. The ALJ found that the severity of Reddin's impairments, considered singly and in combination, did not meet or medically equal the criteria of Listing 12.04. *Id.*

After setting forth the paragraph B criteria, the ALJ found that Reddin had mild limitations in understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* He observed that Reddin had moderate limitation in interacting with others. *Id.*

The ALJ accounted for Reddin's severe mental health issues but noted that treatment records in evidence showed that his symptoms greatly improved when he takes his medication as prescribed and abstains from alcohol and drug abuse. *Id.* He also noted that when treating with his primary care physician, Reddin frequently denied experiencing any significant issues and had normal mental status

examinations. *Id.* The ALJ discussed that Reddin met with a social worker for counseling after his inpatient psychiatric visits, expressed improvement of his symptoms, and had normal mental status examinations when taking his medications as instructed. *Id.* The ALJ found that because Reddin's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria were not satisfied. *Id.*

The ALJ also considered whether paragraph C criteria were satisfied. *Id.* He found that the evidence failed to establish the presences of a serious and persistent condition with a medically documented history over a period of at least two years. *Id.* And the ALJ found no evidence of ongoing treatment with only marginal adjustment. *Id.*

The ALJ noted that the limitations identified in the paragraph B criteria are not an RFC assessment but are used to rate the severity of mental impairments at Steps Two and Three. *Id.* The ALJ noted that his RFC assessment at Steps Four and Five reflected the degree of limitation he found in the paragraph B mental functional analysis. *Id.* The ALJ explained the paragraph B criteria and his reasons for findings and conclusions under those criteria.

Before considering Step 4, the ALJ went through a detailed discussion of the record in determining Reddin's RFC. He assessed Reddin with an RFC for a full range of work at all exertional levels except limited to occasional interaction with the public, and due to occasional numbness, the clamant would be unable to feel texture. *Id.* at 17.

In his findings, the ALJ observed Reddin's testimony that he was unable to work due to mental conditions that limited his ability to concentrate, focus, and interact with others. *Id.* He noted that Reddin admitted he was still able to handle all his activities of daily living independently. *Id.* The ALJ observed Reddin's two hospitalizations for inpatient psychiatric treatment. *Id.* However, after careful consideration of the evidence, the ALJ found that Reddin's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that Reddin's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other record evidence. *Id.*

The ALJ explained that Reddin's records show he was diagnosed with ADHD and regularly presented for medication refills. *Id.* He reported doing well with medications as prescribed and had normal mental status examinations. *Id.* The ALJ noted that Reddin occasionally denied having any issues with depression, anxiety, attention, and irritability. *Id.*

On Reddin's July 2018 inpatient treatment admission, he presented with a request to detox from drug and alcohol abuse. *Id.* at 18. At the time of admission, Reddin was alert and oriented, but had a sad mood and flat effect. *Id.* He was started on medication and underwent counseling, but then signed a 72-hour notice for discharge on July 29, 2018. *Id.* Upon evaluation, it was determined he was not overtly psychotic or a danger to himself or others. The ALJ also observed Reddin's

14

August 18, 2018 emergency room visit and admission. *Id.* On discharge, Reddin had a normal mental status examination and felt safe and ready for discharge. *Id.*

The ALJ further noted that Reddin was seen by a psychiatrist on September 24, 2018 via video conferencing. *Id.* at 19. Reddin had been prescribed medications following both hospital admissions, but he reported that he had recently tapered down on the dosage of one of his medications due to side effects and stopped taking one altogether. *Id.* The ALJ noted that Reddin admitted he also stopped taking ADHD medications as well because he believed they worsened his anxiety. *Id.* The ALJ observed that Reddin reported his mood had been better, but he complained of ongoing stressors related to his finances and unemployment. *Id.* The ALJ observed that Reddin reported he was not sleeping well; experienced occasional panic attacks; had fair energy and okay appetite; and had scattered concentration. *Id.* Reddin also reported ongoing irritability. *Id.*

The ALJ observed that examination showed Reddin had a calm demeanor and was cooperative with no significant psychomotor agitation. *Id.* His affect was calm, his thought content and process were unremarkable, and his insight and judgment were fair to poor. *Id.* He only had fair concentration, but intact memory. *Id.* The ALJ noted that Reddin's diagnosis remained unclear due to his history of substance abuse, but that the working diagnosis was unspecified depressive disorder versus bipolar disorder, unspecified anxiety disorder, insomnia, alcohol use disorder, opiate use disorder, and stimulant use disorder. *Id.*

The ALJ also discussed Reddin's counseling sessions with a social worker following his hospital admissions. *Id.* The ALJ noted that Reddin actively participated in the sessions and reported that his medications were working well. *Id.* Reddin's mental status examinations were unremarkable; with pleasant demeanor, relaxed posture, appropriate mood and affect with normal concentration and good insight and judgment. *Id.* The ALJ noted that despite his issues, Reddin advised his social worker he was stable on his medications and intended to continue following up with his appointments. *Id.* Again, his mental status examination was unremarkable. *Id.*

The ALJ found that, while Reddin had severe impairments, they were not as limiting as alleged. *Id.* The ALJ noted that this was especially so considering that Reddin's symptoms improved when he took his medications as prescribed and followed the treatment plans set forth by his providers. *Id.* The ALJ, determined that Reddin did have severe impairments, but found that he appropriately accounted for them within his RFC. *Id.*

Reddin fails to show the ALJ erred in his Step Three finding. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (citation omitted) (emphasis in original).

Reddin's assertion that he meets a listing because he was found to have a severe impairment at Step Two is without merit. The mere presence of an

16

impairment does not necessarily establish a disability. *See Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992).

Reddin essentially disagrees with the ALJ's findings and seeks to have the Court re-weigh the evidence. This Court cannot resolve conflicts of or reweigh evidence. *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016). Still, the ALJ is solely responsible for deciding whether a listing is met or equaled. SSR 96-6p, 1996 WL 374180, at *3. The Court finds that substantial evidence supports the ALJ's finding that Reddin's impairments, or combination of impairments, did not satisfy Listing 12.04.

### III. Conclusion

Because the ALJ applied the correct legal standards and substantial evidence supports the ALJ's decision;

IT IS RECOMMENDED that the final decision of the Commissioner is AFFIRMED, and that Reddin's appeal be DENIED and DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of

the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this \_\_4th\_\_ day of May, 2022.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE